THE BELMONT BRANCH OF THE STATE BANK OF OHIO, Appellant, *v.* WM. HOGE and THOS. S. HOGE, Respondents.

When commercial paper is pledged by the apparent owner before it matures, as collateral security for advances, the pledgee in good faith is entitled to hold it for the amount of such advances, though it turns out afterward that the party making the pledge was a mere agent for the true owner, and that the transaction was a breach of duty to the principal.

The title of one who for full value receives a transfer of negotiable paper before maturity, and without notice of any outstanding or antecedent equities, is not subject to be defeated by proof that he might have obtained such notice by the exercise of active vigilance.

The fact that paper is transferred by a corporation, to secure advances at a rate of interest exceeding seven per cent, does not tend to impeach the good faith of the transferee, such a contract being no longer illegal.

Chapter 172 of the Laws of 1850 operated *pro tanto* as a repeal of the statutes prohibiting usury, so far as they were applicable to stipulations for a rate of interest exceeding seven per cent, where a corporation is the borrower.

APPEAL from the decision of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of the defendants on the verdict of a jury.

The action was for the alleged conversion of four bills of exchange, amounting in the aggregate to about $14,000, and which were claimed to be the property of the plaintiff. The cause was tried before Judge BOSWORTH. A motion for a new trial was denied at Special Term, and the order was affirmed at the General Term. The case is reported in 7 Bosworth, 543.

The following are the leading facts proved on the trial:

The plaintiffs were a corporation, under the laws of Ohio. They were correspondents of the Ohio Life Insurance and Trust Company. The latter was also a corporation, under the laws of Ohio, and had an agency at New York, to whom they were in the habit of sending the negotiable paper payable in New York which had been taken by the plaintiffs in Ohio.

Between the 29th April, 1857, and the 23d June of the same year, the plaintiffs inclosed by mail to the Ohio Life

Insurance and Trust Company, at New York, four accept-
ances of drafts made in Ohio, payable in New York, four
months after date, respectively, for collection. The accept-
ances were the property of the plaintiffs, received by them
in the course of their banking business, at Bridgeport, Ohio.
The bills were all drawn by one Samuel N. Pike, on persons
in New York, payable four months after date, respectively,
to his own order, and were indorsed as follows: "Samuel N.
Pike, pay E. Ludlow, Esq., Cas., or order. John C. Tal-
man, Cas." They were indorsed in blank, in every instance.
John C. Talman was cashier of the plaintiffs' bank at Bridge-
port, Ohio. Edwin Ludlow was cashier of the Ohio Life
Insurance and Trust Company, at New York. William
Hoge & Co., the defendants, were bankers in the city of New
York. The acceptances were all received by the defendants,
for loans and advances made by them, some thirty to ninety
days before maturity. The defendants had been in the habit
of dealing with the Ohio Life Insurance and Trust Company
before Ludlow was cashier, and continued dealing with them
after he became cashier.

The course of dealing between the Ohio Life Insurance
and Trust Company and the Ohio banks, their correspond-
ents, was, that the negotiable paper of the latter, payable in
New York, was sent to the Ohio Life Insurance and Trust
Company for collection. When any of them wanted money
in New York before the transmitted paper fell due, the cash-
iers of the banks would write to the Ohio Life Insurance and
Trust Company, at New York, to have the paper put to their
credit; the paper would then be placed to the credit of the
bank, deducting discount. The paper thus credited had on
it the same indorsement after as before it was so credited.

The course of dealing between the defendants and the
Ohio Life Insurance and Trust Company was this: Ludlow,
the cashier, would apply to the defendants for a loan, on sat-
isfactory securities: the character of the securities was then
understood between them. The cashier would then send a
pass-book, with the securities, to the defendants; they would
inspect the face of the paper and indorsement, and then make

the advance. As the paper on which the advances were made approached maturity, the Ohio Life Insurance and Trust Company would send the pass-book with a view to have the notes, &c., returned. This was done, on the substitution of new securities or the payment of money by that company.

The defendants supposed the acceptances to have belonged to the Ohio Life Insurance and Trust Company, and had no knowledge of any other person having any interest therein. Ludlow, the cashier of the Ohio Life and Trust Company, at or before the taking of the paper by the defendants, had stated to them that these banks wanted money, and were in the habit of leaning on the Ohio Life and Trust Company.

On the 24th August, 1857, the Ohio Life and Trust Company failed. After the failure, the plaintiffs, on the 28th August, procured an order on the defendants to deliver up the securities in question, which they presented to the defendants in New York, who refused to deliver them.

The Ohio Life and Trust Company were still in debt to the defendants on these transactions, after giving them credit for all they had received from securities.

The plaintiffs, during the trial, proposed to show that the Ohio Life and Trust Company was a needy borrower, at high rates of interest, exceeding the rate of seven per cent per annum, and that the advances in question were usurious. This was excluded by the judge, on the defendants' objection. The plaintiffs excepted to the decision.

At the close of the evidence, the judge submitted to the jury the question, whether the defendants received the paper in good faith, and for value advanced, without notice of any defect of title, or circumstance that should create suspicion : if so, he held that the defendants were entitled to the verdict.

The charge of the judge, and the exceptions thereto, and to his refusals to charge as requested, are stated in full in the report of the case in 7 Bosworth, 543.

*Edwards Pierrepont,* for the appellant.

*Daniel Lord,* for the respondents.

PORTER, J. Upon the facts proved, it is manifest that the jury were right in finding that the defendants were *bona fide* holders of the paper in question.

The instructions of the learned judge, on this branch of the case were more favorable to the plaintiffs than the law would strictly justify. He gave them the benefit of the assumption that, though the defendants took the paper from the apparent owners for value, before it became due, and without notice of any defect in their title, the plaintiffs could reclaim the bills, if they proved the existence of circumstances which would have been likely to excite the suspicions of a cautious and vigilant purchaser. We cannot accept this as an accurate exposition of the rule applicable to the transfer of commercial paper, though it is in accordance with antecedent decisions in the Superior Court. (*Kentgen* v. *Parks,* 2 Sandf., 60; *Pringle* v. *Phillips,* 5 id., 157; *Danforth* v. *Dart,* 4 Duer, 101.)

We had occasion to express our views on this question in the case of *Magee* v. *Badger,* decided at the last December Term. One who, for full value, obtains from the apparent owner a transfer of negotiable paper before it matures, and who has no notice of any equities between the original parties, or of any defect in the title of the presumptive owner, is to be deemed a *bona fide* holder. He does not owe to the party who puts such paper in circulation the duty of active inquiry, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by mere speculation as to his probable diligence or negligence. The authority mainly relied on, in the exceptional cases which have favored an opposite theory, is the decision in *Gill* v. *Cubitt,* reported in 3 Barn. & Cress., 466. The doctrine of that case has been repeatedly overruled, as well in the English as in the American courts; and it cannot be recognized as authority without sanctioning an unwise innovation in our system of commercial law. (*Goodman* v. *Harvey,* 4 Adol. & Ell., 870; *Bank of Bengal* v. *Fagan,* 7 Moore P. C., 61, 72; *Raphael* v. *Bank of England,* 33 Eng. Law & Eq., 276; 2 Parsons on

Bills, 272, 279; *Worcester County Bank* v. *Dorchester Bank,*
10 Cush., 488; *Brush* v. *Scribner,* 11 Conn., 388; *Goodman*
v. *Simonds,* 20 Howard's U. S., 843; *Bank of Pittsburgh* v.
*Neal,* 22 id., 96; *Murray* v. *Lardner,* 2 Wall. U. S., 110,
113; *Hall* v. *Wilson,* 16 Barb., 550; *Steinhart* v. *Boker,*
34 id., 436; *McWilliams* v. *Mason,* 31 N. Y., 294.)

The judge was right in rejecting the offer of the plaintiff
to prove that the advances to the trust company, for which
the paper was pledged, were made on an agreement by the
latter to pay a rate of interest exceeding seven per cent.
The proposed proof neither tended to show, that the defend-
ants had notice that the acceptances were not the property
of the company, nor that the transfer was made to secure the
performance of a usurious and illegal agreement. The act
of 1850 operated *pro tanto* as a repeal of the statutes prohibit-
ing usury, so far as they were applicable to stipulations for a
rate of interest exceeding seven per cent, where a corporation
is the borrower. The contract which the plaintiff proposed
to prove, between the Trust Company and the defendants,
was one which the parties could lawfully make, and which it
would have been the duty of the courts to enforce. (Session
Laws 1850, ch. 172, p. 334; *Rosa* v. *Butterfield,* 33 N. Y.,
665; *Butterworth* v. *O'Brien,* 23 id., 275; *Southern Life
Insurance Co.* v. *Packer,* 17 id., 51; *Curtis* v. *Leavitt,* 15
id., 85, 154, 229.)

The other questions raised by the exceptions were properly
disposed of on the trial.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.