Bay, J.
The questions made in the ease relate to the rights of indorsees of negotiable paper, and arise upon the charge of the court to the jury. Though other questions *379 are made in argument, we do not deem it important to notice here but oue of the grounds of exception.
The court charged the jury, that, as the notes were conceded to be invalid as between the original parties, the-plaintiff, though an indorsee of the notes for value before-due, could not recover, if he had such knowledge of facts and circumstances as to put an ordinarily careful and prudent man upon inquiry as to the infirmities of the notes.. The question, then, is, whether this rule is to be applied to-a holder of negotiable paper, to whom it is indorsed in the usual course of trade, for value before due.
It was early the settled law in England, in regard to-paper drawn in a form to pass from hand to hand in the course of business and trade, that the holder, who came by it fairly and honestly, before due, for a valuable consideration, had a good title. Salk. 126 ; Miller v. Race, 1 Bur. 452; Peacock v. Rhodes, Doug. 633; Lawson v. Weston, 4 Esp. 26; Gorgier v. Mieville, 3 Barn. & Cres. 45.
In 1824, in Gill v. Cubit, 3 Barn. & Cres. 466, the Court of King’s Bench added a new limitation to the title of the-holder of negotiable paper, and held that he acquires no title, as against the equities of antecedent parties, if he-takes it under circumstances which would excite the suspicions of a prudent and careful man. This rale was followed for a number of years in England, and by many of the courts of this country.
But in 1834, in Crook v. Jadis, 5 Barn. & Ad. 909, this-rule was so far shaken, that an indorsee of a bill of exchange was permitted to recover against the drawer unless he proved that the indorsee was guilty of gross negligence in taking the bill; and two years later, in Goodman v. Harvey, 4 Ad. & El. 870, it was decided that gross negligence-is not alone enough to destroy the title of a holder for value, but that a case of bad faith in taking the security must be made against him, in order to defeat his claim.
Since 1836, the rule established in Goodman v. Harvey. has been followed by the British courts, and may now be *380 regarded as the settled law of that country. Raphael v. The Bank of England, 17 C. B. (84 E. C. L.) 161.
Although the rule declared in Gill v. Cubit has been followed by many of the courts of this country, it has been so generally repudiated by the more modern decisions, and that of Goodman v. Harvey, approved, that the doctrine of this case may now be regarded to be the American as well as English law upon the subject. Worcester County Bank v. Dorchester and Milton Bank, 10 Cush. 488; Smith v. Livingston, 111 Mass. 342; Matthews v. Poythress, 4 Geo. 287; Miller v. Finley, 26 Mich. 249; Phelan v. Moss, 67 Penn. St. 59; Magee v. Badger, 34 N. Y. 247; Belmont Bank v. Hoge, 35 N. Y. 65; Goodman v. Simonds, 20 How. 343; Murray v. Lardner, 2 Wall. 110; Hotchkiss v. National Bank, 21 Wall. 354; 1 Smith’s Lead. Cas. (7 Am. ed.) 825; Redfield & Bigelow’s Lead. Cas. on Bills and Notes, 257.
In the case of the Belmont Bank v. Hoge, supra, the view of the New York Court of Appeals upon the question is stated as follows: “ One who, for full value, obtains from the apparent owner a transfer of negotiable paper before it matures, and who has no notice of any equities between the original parties, or of any defects in the title of the presumptive owner, is to be deemed a bona fide holder. He ■does not owe to the party who puts such paper in circulation the duty of active inquiry, to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by mere speculation as to his probable diligence or negligence.”
In Smith v. Livingston, 111 Mass. 345, the court disapprove the rule of Gill v. Cubit, and say: “ Circumstances which might excite the suspicions of one man might not .attract the attention of another. It is a rule which business men can not act upon in the ordinary affairs of life with .any certainty that they are safe.”
In Murray v. Lardner, supra, the law in regard to negotiable paper, as settled by the Supreme Court of the United States, is summarized, as follows : “ The party who *381 takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. . . . The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and willful ignorance alike involve the result of bad faith.”
It was, moreover, settled in that case, that circumstances tending to show bad faith or fraud in taking such paper,, though not conclusive in themselves, are admissible in evidence, and the establishment of bad faith or fraud, whether by direct or circumstantial evidence, is fatal to the title of the party so taking it.
The rule established in these eases neither restricts the usefulness of paper made to pass from hand to hand in commerce, nor does it relieve the party taking it from the obligations of good faith. This rule may be more readily applied than that laid down in Gill v. Cubit, for a rule based on good faith as a standard is more easily comprehended than one grounded upon speculations as to what ought to excite the suspicions of a prudent man. A prudent man, it has been well said, may be more or less suspicious under similar circumstances at one time than at another, and may also suspect where another equally prudent would not, and the standard of the jury may be higher' or lower than that of other men who are prudent in the management of their affairs.
The point in controversy has not been directly determined by the Supreme Court of this state. The rules laid down in Davis v. Bartlett, 12 Ohio St. 534, which are stated in the syllabus, are, however, in harmony with that of Goodman v. Harvey; so is the decision in Bassett v. Avery, 15 Ohio St. 299, as well as the principle upon which the case was decided. But a remark upon a hypothetical case stated in *382 the opinion delivered in Bassett v. Avery warrants the charge to the jury complained of in this case. Speaking of what might constitute a defense against an indorsee of a negotiable note, it is said: “If such circumstances of suspicion had been shown to exist as ought to have put Barrett upon inquiry before purchasing, he would be pre•sumed to have either made the inquiry and ascertained the truth, or have been guilty of a degree of negligence equally fatal to his claim to be considered a bona fide purchaser.” This statement is made upon the authority of Williamson v. Brown, 15 N. Y. 854; but that case did not relate to negotiable paper; and we have seen, moreover, that a different'rule now obtains in New York in reference to that kind of instruments.
In McKesson v. Stanbury, 3 Ohio St. 156, it was only necessary to determine upon which party the burden of proof rested, and the case, as explained, and upon the principles settled in Davis v. Bartlett, was decided right. The statement in the opinion in regard to the prudence required of an indorsee of negotiable paper was unnecessary to the decision of the case, and like that of a similar character in Bassett v. Avery, may be regarded only as a dictum. ’Without questioning the correctness of the decisive points of .these cases, we do not feel bound to follow the dicta reférred to. Although entitled to great weight as the utterances of ¡able judges, and warranted by a line of decisions, they were, however, only incidental remarks in the cases in which they were made, and are not in accordance with the rule as now settled by repeated decisions of the highest courts of England and America.
Guided by the leading authorities of both countries, we are brought to the following conclusions :
A holder of negotiable paper, who takes it before maturity, for a valuable consideration, in the usual course of .trade, without knowledge of facts which impeach its validity between antecedent parties, holds it by a good tltlel
To defeat his recovery thereon, it is not sufficient to show *383 ■that he took it under circumstances which ought to excite suspicions in the mind of a prudent man.
To have that effect, it must be shown that he took the paper under circumstances showing bad faith or want of honesty on his part.
Circumstances tending to show bad faith or-fraud in taking such paper, though not conclusive in themselves, .are admissible in evidence; and the establishment of such bad faith or fraud, whether by direct or circumstantial evidence, subjects the holder of paper so taken to defenses -existing between antecedent parties.
It follows that the judgment of the District Court and that of the Common Pleas must be reversed, and that the eause must be remanded for further proceedings.

Judgment accordingly.

'Scott, Chief Judge, Wright, Johnson, and Ashburn, JJ., -concurred.