HEARD APRIL TERM, 1876.

## WITTE *vs.* WILLIAMS.

Bills of exchange, drawn by A B on C D, with blanks for the dates, times of payment and names of payees, were left by the drawer in the hands of drawee for certain purposes, who afterwards, in fraud of the rights of the drawer, filled up the blanks, accepted the bills and transferred them before maturity to a *bona fide* holder for valuable consideration without notice of the circumstances under which they were drawn and left in the hands of the drawee: *Held,* In an action on the bills against the drawer, that the holder was entitled to recover.

The *bona fide* holder of a negotiable instrument, transferred before due for a valuable consideration, and without notice of any defect which would render it void between antecedent parties, has a right to recover upon it, notwithstanding its want of validity as against one or more of such parties.

The acceptor of a bill of exchange, having it in his possession, may, before maturity, transfer it to a *bona fide* holder, and no presumption of payment arises from the fact of his possession before maturity.

A bill of exchange is not invalid as a regular and formal bill of exchange because it is payable to the drawee.

BEFORE REED, J., AT CHARLESTON, JANUARY TERM, 1876.

This was an action by Charles O. Witte against Mrs. Sally C. Williams.

The complaint alleged two causes of action, as follows :

First, for a first cause of action—

1. That on the 4th day of December, 1868, at Charleston, in the State aforesaid, the defendant made and delivered to the plaintiff her bill of exchange in writing, dated on that day, and directed the same to certain persons, under their firm name of J. & J. D. Kirkpatrick, to pay to the order of this plaintiff $2,500 twelve months after the date thereof, for value received.

2. That then and there the said J. & J. D. Kirkpatrick, upon sight thereof, accepted said bill.

3. That at maturity the same was duly presented to said J. & J. D. Kirkpatrick for payment, but it was not paid, of all which due notice was given to the said defendant.

4. That no part thereof has been paid except the following amounts, viz.:

January 10, 1870, $259; June 7, 1870, $489.81; April 13, 1871, $497.35, making in all the sum of $1,246.16; but that in this last mentioned amount is included the sum of $188.43 for interest on the said bill to the 13th day of April, 1871; and that there is, therefore, now due on the said bill the sum of $1,442.27, with interest thereon from the 13th of April, 1871.

And the plaintiff further says that he is the lawful owner and holder of the said bill, and the defendant is justly indebted to him therefor in the sum of $1,442.27, with interest thereon from the 13th day of April, 1871, and $2.35 costs of protest.

Second, for a second cause of action—

That on the 15th day of December, 1868, the defendant, at Charleston aforesaid, made her other bill of exchange in writing and directed the same to J. & J. D. Kirkpatrick, at Charleston aforesaid, and thereby required the said J. & J. D. Kirkpatrick to pay to the order of the said J. & J. D. Kirkpatrick the sum of $2,500 three hundred and sixty-five days after the date thereof, which period elapsed before this suit was brought, and then and there delivered the said bill to the said J. & J. D. Kirkpatrick, who endorsed the same and delivered it to the plaintiff; and the said plaintiff further says that the said bill was duly presented to the said J. & J. D. Kirkpatrick for acceptance, and that the said firm duly accepted the same, and at maturity that said bill was duly presented for payment but was not paid, of all which the defendant had notice.

And the plaintiff further says that he is now the lawful owner and holder of the said bill, and the defendant is justly indebted to him therefor in the sum of $2,500, principal, together with interest thereon from the eighteenth day of December, 1869, and $2.35 costs of protest.

The answer is as follows:

The defendant, answering the complaint herein, says:

First, for a defense to the first alleged cause of action—

1. Defendant denies all those allegations which are contained in paragraph 1.

2. Defendant alleges that on or about the 15th of June, 1868, she made and delivered to James D. Kirkpatrick, doing business under the name of J. & J. D. Kirkpatrick, a person other than the plaintiff, with whom defendant had business transactions, a certain bill of exchange in writing, signed by defendant, but not dated, and directed the same to the said J. & J. D. Kirkpatrick, and thereby required the said J. & J. D. Kirkpatrick to pay to the order of $2,500 months after the date thereof; and defendant denies that she has any knowledge or information

sufficient to form a belief whether or not said bill of exchange was subsequently dated 28th December, 1868, and made payable to the order of the plaintiff, and thereafter duly transferred and delivered to him by the lawful holder or holders thereof.

3. Defendant alleges further that said bill of exchange was delivered by her to the said J. & J. D. Kirkpatrick to cover advances of money made, or about to be made, to her by the said J. & J. D. Kirkpatrick, which advances defendant had paid and made good to the said J. & J. D. Kirkpatrick before the date of the alleged transfer and delivery of said bill of exchange to the plaintiff; and that this said bill had in fact been paid before such alleged transfer and delivery.

4. Defendant alleges that if the plaintiff is in fact the holder of said bill of exchange it was transferred and delivered to him by the said J. & J. D. Kirkpatrick as security for an indebtedness from the said J. & J. D. Kirkpatrick to the said plaintiff, and that the plaintiff well knew at the date of said transfer that the firm of J. & J. D. Kirkpatrick had long ceased to exist or transact business under such firm name, and that the said James D. Kirkpatrick, who had formerly done business as J. & J. D. Kirkpatrick, had formed a partnership with George W. Witte, and that at the date of the alleged transfer and delivery he was doing business under the firm name of Kirkpatrick & Witte.

Second, and for a defense to the second alleged cause of action, defendant says:

1. She denies that on the 18th day of December, 1868, she made her other bill of exchange in writing and directed the same to J. & J. D. Kirkpatrick, as alleged in plaintiff's second cause of action.

2. And for a further defense to said second cause of action defendant makes the same defense as the defense hereinbefore made to the first cause of action.

On March 14, 1872, an order was signed by the Court, with the consent of the attorneys, appointing Samuel Lord, Esq., Referee, and referring the case to him.

On April 14, 1875, the Referee submitted his report, as follows:

,. This case was referred to me with instructions to pass upon the issues of law as well as of fact involved therein.

I find, as matter of fact, that for many years prior to 1865 John Kirkpatrick and James D. Kirkpatrick carried on a large factorage and commission business in Charleston, under the style of J. & J. D. Kirkpatrick. John Kirkpatrick died in 1865 and J. D. Kirkpatrick continued the same business, under the same firm name, until August 15th, 1868, when the following notices were given, by advertisement and otherwise, to wit:

1. Dissolution.—The firm of J. & J. D. Kirkpatrick is dissolved from this date. The business of the firm will be attended to by the undersigned, in liquidation.

(Signed,)             JAMES D. KIRKPATRICK.

2. The subscribers have this day entered into a copartnership for the transaction of a factorage and commission business at No. 6 Accommodation Wharf.

(Signed,)             JAMES D. KIRKPATRICK.
                            GEO. W. WITTE.

The plaintiff had notice of these advertisements.

In July, 1867, J. & J. D. Kirkpatrick owed the defendant on open account about $18,000. At her request this account was closed by her taking their note at twelve months for $15,000 and their holding $3,000 subject to her order.

The defendant received money from the firm after this, from time to time, until about the 15th June, 1868. At this date she had over drawn her account about $6,000, exclusive of the $15,000 not yet due. In consequence of this over draft, at the request of J. & J. D. Kirkpatrick, she delivered to them three drafts, or bills of exchange, directed to the firm, one for $1,000, and the other two for $2,500 each, leaving blank the dates, time of payment and name of payee. When Kirkpatrick ceased to do business under the name of J. & J. D. Kirkpatrick, the defendant's account was made up, the $6,000 over draft was credited upon the $15,000 note, and a new note for the balance—namely, $8,881—was signed by J. & J. D. Kirkpatrick, and delivered to her, but the defendant omitted to take out of Kirkpatrick's hands the two drafts for $2,500 each. On the 4th and 15th of December, 1868, Kirkpatrick fraudulently filled the blanks in these drafts, accepted them in the name of J. & J. D. Kirkpatrick, and passed them off to the plaintiff, who paid over the proceeds to Kirkpatrick, taking from him

certain other collateral securities. With the money thus realized, Kirkpatrick paid a debt which he had contracted under the name of J. & J. D. Kirkpatrick to Lewis F. Robertson, for which Mrs. Williams, the defendant, was not responsible. When the drafts were first seen by the plaintiff, the blanks had already been filled up. The drafts not having been paid at maturity by the acceptor, this action was brought to recover against the defendant, as drawer, the amount due thereon. His right to do so has been resisted by the defendant on various grounds, but it seems to me that the plaintiff is entitled to a decree, unless the evidence shows that he had notice, at the time the drafts were discounted by him, of the fraud perpetrated by Kirkpatrick on the defendant. Actual notice is not pretended, and the only question is, did the plaintiff know such facts as should have put him on inquiry? It is conceded that, if the drafts had been discounted prior to the date when Kirkpatrick ceased to do business under the name of J. & J. D. Kirkpatrick, there would have been nothing to have awakened the plaintiff's suspicions; but it is urged that the fact that the drafts were drawn on J. & J. D. Kirkpatrick showed that they were intended to aid him in carrying on the business he had conducted under that name, and not to aid him in its liquidation, and that, therefore, the plaintiff must have known that Kirkpatrick, in issuing these drafts several months after he had ceased to do business under the name of J. & J. D. Kirkpatrick, was making an improper use of them. There would be much force in this argument if the drafts had been dated prior to the 18th August, 1868, or if the plaintiff had known that when they were signed by the defendant the dates had been left blank; but, according to the testimony, when the plaintiff first saw these drafts the dates and the time of payment had already been filled up. In the absence of all information to the contrary, therefore, he had a right to presume that the drafts had been signed by the defendant on the days of their respective dates, to wit: the 4th and 15th of December, 1868, and had then been placed, for the first time, in the hands of Kirkpatrick. It is difficult to see how the plaintiff could have supposed that drafts dated in December, 1868, were given to enable Kirkpatrick to carry on a business which he had abandoned six months previously. It seems to me that the only inference which the plaintiff could reasonably have drawn from the facts within his knowledge was that the defendant had, in December, 1868, drawn these drafts on J. & J. D. Kirk-

patrick to pay some debt due by her to that concern, or to lend her name to Kirkpatrick to aid him in liquidating the business which he had previously carried on under that name. He had every reason to believe, therefore, that in discounting the drafts to enable Kirkpatrick to pay off a debt contracted by him under the name of J. & J. D. Kirkpatrick he was applying them to the very purpose for which they had been made.

I see nothing in the circumstances of the case to affect the plaintiff with notice of Kirkpatrick's fraud, and am, therefore, of opinion that he is entitled to recover against the defendant the amount now due upon the drafts.

The defendant excepted to the report on the following grounds:

1. For that said Referee reported that the only inference which the plaintiff could reasonably have drawn from the facts within his knowledge was that the defendant had, in December, 1868, drawn the drafts sued on, on J. & J. D. Kirkpatrick, to pay some debts due by her to that concern, or to lend her name to Kirkpatrick to aid him in liquidating the business which he had previously carried on under that name, and that the plaintiff had every reason, therefore, to believe that in discounting the drafts to enable Kirkpatrick to pay off a debt contracted by him under the name of J. & J. D. Kirkpatrick he was applying them to the very purpose for which they had been made; whereas he ought to have found and reported that the only legal inference which the plaintiff could have drawn from the facts within his knowledge was that Kirkpatrick held the drafts for "acceptance," and that he had not the right to transfer them for his own benefit; that is to say, that he had possession of the drafts for a special purpose, and not as owner. There was no apparent ownership in J. & J. D. Kirkpatrick, or apparent right to transfer the drafts to the plaintiff.

2. For that said Referee reported that there was nothing in the circumstances of the case to affect the plaintiff with notice of Kirkpatrick's fraud, and the plaintiff is therefore entitled to recover against the defendant the amount now due upon the drafts; whereas he should have found and reported that inasmuch as the drafts were drawn upon "J. & J. D. Kirkpatrick," and Kirkpatrick had ceased to do business under that name when plaintiff discounted the drafts, of which fact plaintiff had notice, and, moreover, that inasmuch as the drafts were in the possession of the drawee, the plaintiff ought

not to recover as a *bona fide* holder for value of the bills in suit. That the plaintiff did have actual notice of such facts as should have put him on inquiry.

3. For that said Referee reported that it is conceded that if the drafts had been discounted prior to the date when Kirkpatrick ceased to do business under the name of J. & J. D. Kirkpatrick there would have been nothing to have awakened the plaintiff's suspicions; whereas the defendant maintains that the fact of the drafts being in the possession of the drawee, whether before or after maturity, was in itself sufficient to have put the plaintiff on inquiry; that plaintiff had no right to assume that Kirkpatrick's title to the drafts was other than that indicated by the instrument itself, or that he had any other or different rights than the law would imply from the form and character of the instruments and in the ordinary course of business, and, according to mercantile usage, these drafts could only have been in Kirkpatrick's possession either for acceptance or after they had been paid, and in neither case would he have had the right to transfer them. In the first case he would have had possession for a special purpose, to wit, "acceptance," and in the latter they would have been *functus officio* and not capable of being again put in circulation. The law will not presume the drafts to have been made for the accommodation of the drawees; the *onus* was on plaintiff to prove that fact, if such was the case. On the contrary, however, the Referee has found and reported that the drafts ought to have been delivered up to the defendant in August, 1868, and that afterwards "Kirkpatrick fraudulently filled the blanks in these drafts, accepted them in the name of J. & J. D. Kirkpatrick, and passed them off to the plaintiff."

On January 8th, 1876, His Honor Judge Reed filed his decree on the report and exceptions as follows:

REED, J. This cause came up for hearing and trial on the pleadings, the report of the Referee, and exceptions thereto:

This action is brought upon two alleged bills of exchange, dated 4th and 15th December, 1868, for $2,500 each, drawn by the defendant on, and accepted by, "J. & J. D. Kirkpatrick," one payable to the order of J. & J. D. Kirkpatrick and the other to the order of the plaintiff.

The Referee has found, as matters of fact, that J. D. Kirkpatrick carried on a factorage business under the name of J. & J. D.

Kirkpatrick until August 15th, 1868, when he entered into a co-partnership with George W. Witte, for the transaction of a factor-age and commission business, under the style of Kirkpatrick & Witte, and that the plaintiff had notice of these facts; that when Kirkpatrick ceased to do business under the name of J. & J. D. Kirkpatrick the defendant's account with him was made up, and that thereupon the instruments now sued on should have been de-livered up to the defendant, but that she omitted to take them out of Kirkpatrick's hands; that at this time the dates, times of pay-ment and names of payees were not filled up. That on the 4th and 15th December, 1868, Kirkpatrick "fraudulently filled the blanks," accepted them in the name of J. & J. D. Kirkpatrick, and in this shape they were presented to the plaintiff by Kirkpatrick, the acceptor, and thereupon plaintiff discounted the said instruments, paid over the proceeds to Kirkpatrick, and took from him certain collateral securities, and Kirkpatrick applied the proceeds to the payment of a debt which he had contracted under the name of J. & J. D. Kirkpatrick, for which the defendant was in nowise re-sponsible.

The plaintiff claims that said instruments are bills of exchange, and that he is a *bona fide* holder for value of the same. His right to recover depends upon his establishing these facts. The defend-ant does not except to the facts found by the Referee, but to the legal inferences drawn from those facts, assuming that both instru-ments are bills of exchange. As the Referee has stated it, the only question is, did the plaintiff know such facts as should have put him on inquiry?

Actual notice of Kirkpatrick's fraud is not pretended, but did the plaintiff know such facts as should have put him on inquiry? I am of opinion, from all the facts found by the Referee, that the plaintiff did have notice of such facts as ought to have put him on inquiry, and that he does not occupy the position of a *bona fide* holder of negotiable paper who has acquired title in good faith for a valuable consideration, from one capable of transferring it, and without notice of any defect in his title or right to transfer.— *Central Bank of Brooklyn* vs. *Hammett,* (50 N. Y.,) 158. And, moreover, I am of opinion that one of the instruments is not a bill of exchange; it is a bill drawn by the defendant on J. & J. D. Kirkpatrick, requesting said drawee to pay to his own order a par-ticular sum of money, and such an instrument is not entitled to be

deemed a bill of exchange, for every bill of exchange presupposes a duty of the drawee to pay the money to some other person than himself."—Story on Bills, § 35. Therefore, it is adjudged and decreed that the defendant's exceptions to the Referee's report be sustained, and that the judgment be entered for the defendant.

The plaintiff excepted to the foregoing decision and appealed therefrom upon the following grounds :

1. Because the plaintiff became the holder of negotiable papers for value before they were due without knowledge or notice of fraud in the inception or in the issue of them, and is not affected by any fraudulent use of them by Kirkpatrick.

2. Because His Honor erred in deciding that the only question is : did the plaintiff know such facts as would have put him on the inquiry ? And in holding that he did have notice of such facts as ought to have put him on the inquiry, and that he, therefore, does not occupy the position of a *bona fide* holder of negotiable paper.

3. Because the title of a purchaser of negotiable paper for value before it becomes due, in the origin or use of which fraud is charged, can only be affected by *mala fides* on his part, of which there is no pretense in this case, and is not affected because he failed to make inquiry, even if he failed to make such inquiry through negligence.

4. Because the circumstances of this case were not such as to put the plaintiff on the inquiry.

5. Because the defendant, having entrusted these papers now in suit to the possession of Kirkpatrick, with blanks in them, is bound by his acts respecting them, and in this respect she made him her agent.

6. Because no objection having been made on the trial before the Referee, or in the exceptions to his report, that one of the instruments sued upon was not a bill of exchange, it was too late to make the exception at the hearing.

7. Because both of the instruments sued upon have all the essential characteristics of bills of exchange.

8. Because, at all events, this is an objection strictly technical, and the Court will allow the mistake, if any, to be corrected by an amendment of the pleading to correspond with the proof, especially as such amendment can in no way operate as a surprise to the defendant.

*Simonton & Barker,* for appellants, filed a printed argument, in which the views taken in the opinion of the Court were presented and discussed at considerable length, and in which the authorities contained in the opinion, with many other authorities, were cited.

*Hayne & Son,* contra, also filed a printed argument, in which, after stating the case, they proceeded as follows:

Plaintiff claims to recover as against the drawer of these instruments as a *bona fide* holder for value of negotiable paper. Respondent maintains that, as against her, plaintiff does not occupy the position of a *bona fide* holder of negotiable paper.

1. "A *bona fide* holder of negotiable paper is one who has acquired title in good faith for valuable consideration from one capable of transferring it, or *from one in possession of the paper with an apparent right to transfer it,* and without notice of any defect in his title or right to transfer."— *Central Bank of Brooklyn* vs. *Hammett et al.,* 50 N. Y. Rep., (Ct. of Ap.,) 5 Sickels, 159.

2. "One who obtains the transfer of negotiable paper before maturity for value without notice of any defect in the title of the *apparent owner* acquires and has all the rights of a *bona fide* holder by title derived from the actual owner. The possession of a bill or note payable to bearer, or endorsed in blank by one *not a party* to the instrument, is presumptive evidence of ownership. But *possession* of such an instrument BY A PARTY TO IT *only authorizes a presumption of such rights and obligations as are indicated by the instrument itself.* The actual relations to each other of the several parties to the instrument are presumed to be such as the law declares in the absence of any circumstance to take the instrument out of the general rule and vary the liability of the parties as between each other."— *Ib.,* p. 159.

3. "An individual negotiating for the purchase of a bill or note from one having it in possession, and *whose name appears upon it,* must assume that the *title* of the holder, as well as the liability of all the parties, *is precisely that indicated by the instrument itself;* that is, he *cannot assume* that the person in possession has any other or *different rights,* or that the liability of the parties is other or different *from that which the law would imply* from the form and character of the instrument."— *Ib.,* 160.

4. Appellant acquired title to the bills in suit from the *drawee and acceptor,* the person primarily liable for the payment of the

debt, and "the bills could only, in the ordinary course of business, and according to mercantile usage, have been in the possession of the transferrer either *for acceptance* or after they had been paid, and in neither case would he have had *the right to transfer them.* In the first case he would have had possession for a special purpose, and *not as owner,* and in the latter they would have been *functus officio* and not capable of being again put in circulation."—*Ib.,* 160.

5. There was then *no apparent ownership* in Kirkpatrick, *or presumptive right to transfer,* and plaintiff did *not* acquire and have by reason of the transfer all the rights of a *bona fide* holder who had derived title from the actual owner.

7. "If the paper had been made for the accommodation of the drawee, and to be used by him, that fact should have been proved. The law will not presume the paper to have been made except in the ordinary course of business and according to commercial usage."—*Ib.,* p. 160. The evidence shows that the use made of the bills was a "fraud perpetrated by Kirkpatrick on the defendant."

8. Inasmuch, then, as appellant does not occupy the position of a *bona fide* holder of negotiable paper, he *is* affected by the fraudulent use of the bills by Kirkpatrick if the circumstances of the case are such as ought to have put him on the inquiry, and the Circuit Judge did not err in holding that the only question is : did the plaintiff know or have notice of such facts as should have put him on inquiry?

9. "What circumstances will amount to actual or constructive notice of any defect or infirmity in the title to the bill so as to let it in as a bar or defense against a holder for value has been a matter of much discussion. It is agreed on all sides that express notice is not indispensable; but it will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade upon the transaction and to *put the holder upon inquiry.*"—Story on Bills, § 194.

10. If the Circuit Judge did not err in holding that the question in this case is: did the plaintiff know or have notice of such facts as should have put him on inquiry? then, from the facts and circumstances of the case, as found by the Referee, the legal inference necessarily follows that "the plaintiff did have notice of such facts as ought to have put him on inquiry, and that he does not occupy the position of a *bona fide* holder of negotiable paper who has acquired title in good faith, for valuable consideration, from one

capable of transferring it, and without notice of any defect in his title or right to transfer."

11. The fact that the respondent, the drawer of the bills, put them in possession of Kirkpatrick, the drawee, with blanks in them, did not constitute him her agent *to negotiate the bills*, and she is not bound by his fraud in this respect.

12. The judgment of the Court below is fully sustained by the principles of law applicable to the undisputed facts of the case.

October 23, 1876. The opinion of the Court was delivered by

MOSES, C. J. It is now settled, by a current of authorities that a *bona fide* holder of a negotiable instrument transferred before due for a valuable consideration, and without notice of any defect which would render it void between antecedent parties, has a right to recover upon it, notwithstanding its want of validity as against one or more of such parties.

The convenience and necessities of commerce, which require that instruments so generally used as an apt and ready substitute for coin should be protected by the same rule which, in the absence of fraud, confers a title to coin by its mere possession. The restrictions with which the principle which had before prevailed was burdened through the decision in *Gill* vs *Cubbitt* (3 B. & C., 466,) so affected the use of negotiable securities, and the purpose and interest they were to serve, that, after dissatisfaction with the rule which it established had been, from time to time, expressed by the Judges, its authority was finally overthrown by the decision of the Court in *Goodman* vs. *Harvey*, (4 A. & E., 870.) It would be an useless consumption of time to trace the succession of authorities by which the Courts of England have adopted the principle which, as already stated, may now be regarded as fixed. The opinion of the Court in *Goodman* vs. *Simonds* (20 How., 343,) contains an interesting and exhaustive reference to the cases and a comment upon them in learned and expressive diction. To the same effect are the American cases within our reach: *Conroy* vs. *Warren*, 3 Johns. Cas.; *Woodhull* vs. *Jones*, 10 Johns., 231; *Bay* vs. *Coddington*, 5 Johns. Ch., 54; *Belmont Br. B.* vs. *Hoge*, 35 N. Y., 69; *Knight* vs. *Pugh*, 4 W. & S., 415; *Brown* vs. *Street*, 6 *ib.*, 221; *Chapman* vs. *Rose*, 56 N. Y., 137; *Thurston* vs. *McCown*, 6 Mass., 428. The principles which governed the decisions in the following cases in this State show that they are founded on the same accepted

doctrine: *Jackson* vs. *Heath*, 1 Bail., 355; *Mims* vs. *Whidden*, 2 Bail., 451; *Sims* vs. *Lyles & Street*, 1 Hill., 39; *Administrators of Lee* vs. *Ware*, *ib.*, 313; *Schaube* vs. *Clark*, 1 Strob., 299.

Error is charged by the appellant on the part of the presiding Judge in holding that the only question is: "Did the plaintiff know such facts as should have put him on the inquiry?" and in further holding "that he did have notice of such facts as ought to have put him on the inquiry, and that he, therefore, does not occupy the position of a *bona fide* holder of negotiable paper who has acquired title in good faith, for a valuable consideration, from one capable of transferring it, and without notice of any defect in his title or right to transfer." It is enough to say that the rule which the Judge below thus applied as the one by which his judgment was governed, so far as it was founded on the existence of notice sufficient to put the appellant on inquiry, is in conflict with the authorities which we have above cited. It is in conflict, too, with the decision in *Murray* vs. *Lardner*, (2 Wall., 110,) which affirms *Goodman* vs. *Simonds*, and declares, as the settled law of the Court, that "suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part." If the rule adopted by the presiding Judge is to prevail, by what standard can the required prudence be measured, so that it may be introduced as a necessary element in the constitution of a principle of law? And if no such standard can be found, how could a rule wanting the essential quality of certainty, with any show of reason, be properly applied to a class of instruments of such general use in the commercial business of the country?

While the respondent does not rely upon the ground on which, in part, the Circuit Judge rested his judgment, she contends that the plaintiff cannot maintain his action, because, as against her, he does not occupy the position of a *bona fide* holder of a negotiable paper. In other words, she claims that his title was not derived from one in possession of the paper, with an apparent right to trasfer it, his title having been derived through the drawee of the bills.

The instruments were transferred to Witte without any knowledge on his part of the circumstances under which they came to the

hands of J. D. Kirkpatrick, who alone, from the death of John Kirkpatrick, the senior partner, had carried on the business in the name of the old firm of J. & J. D. Kirkpatrick, and without any notice of his fraud in regard to the drawer, Mrs. Williams. They were transferred, too, long before maturity by the drawee, in whose possession she had left them, with the dates, time of payment and names of payees not filled up. These were inserted by J. D. Kirkpatrick on the very day on which, for valuable consideration, they were discounted by Witte.

The acceptor of a bill stands in the same relation to it as the maker does to his note. If the presumption of payment does not arise from the possession of a maker of a note endorsed by another before maturity, why should it arise on a bill before due in the hands of an acceptor? In *Aiken* vs. *Cathcart* (3 Rich., 133,) the maker transferred the note before due with the name of payee blank, and yet the endorsers were held liable. It is not an unusual thing for the maker to present his note endorsed by others to a bank and obtain its discount. The very fact of a bill being found in the possession of the acceptor before maturity rather leads to the inference that it was left there for a purpose with which the idea of payment would be entirely inconsistent. In the usual course of business the bill is withdrawn by the holder from the drawee on his becoming acceptor and not again presented to him until demand for payment. The knowledge by Witte of the dissolution of the firm was no notice of any wrong, much less fraud, committed by Kirkpatrick. The bills were signed by the respondent and addressed to J. & J. D. Kirkpatrick for acceptance, with every assurance to Witte, from the face of the paper, that they had been executed on the days on which they bore date. Does it lie in the mouth of the drawer who so addressed the bills to say that a third party should not have had any dealing in regard to them because the firm on which they were drawn had been before dissolved? Why may not Witte have well supposed that the object of the drawer was to raise funds for the liquidation of debts due by the firm, or for some legitimate business purpose in which it was concerned? The bills, too, as between the drawer and drawee, had been executed on a valuable consideration.

Mr. Byles, in his work on Bills, p. 166, referring as authority to *Attenborough* vs. *Mackenzie*, (25 L. J. Exch., 244,) says: "A transfer by the acceptor before maturity does not extinguish the bill;

the acceptor may reissue it before it is due, and the parties whose names are on the bill will be liable to a subsequent holder."

In *Hamer* vs. *Steele*, (4 Exch.,) Wilde, C. J., says: "But we think it is no objection to the negotiability of a bill that it has during currency, before it was payable, become the property of one of the acceptors. Until the time of payment arrives, the contract of the acceptor is unperformed and incapable of being performed. And the right to sue upon it may be transferred with the property in the bill by any lawful owner of it. It is no objection to such transfer, or to an action brought by one claiming under it, that the party making the transfer would be incapacitated to sue if he had retained the bill till maturity."

In *Morley* vs. *Culverwell*, (7 M. & W., 174,) the drawer of a bill of exchange before it became due agreed with the acceptor that on his giving a certain mortgage security for the amount, he, the drawer, should deliver up to him the bill of exchange as discharged and fully satisfied. The acceptors accordingly executed the mortgage and received the bill uncanceled: *Held*, That the drawer was liable on the bill to a party to whom the acceptor afterwards endorsed it for value before it became due. At page 181, Lord Abinger said: "The defendant, the drawer of the bill, agrees with the acceptor, while it is running, to deliver it up to him, in consideration of his having the security of a mortgage of property of the acceptor, and gives up the bill accordingly without striking out his name as drawer. Before the bill becomes due a party who is ignorant of this transaction discounts it for the acceptor, and before it becomes due transfers it for value to the plaintiff, who is also ignorant of the transaction. The question then is, whether the discharge of a bill by the acceptor, by an arrangement with the drawer before it is due, can affect the bill in the hands of an innocent holder for valuable consideration? I think it cannot. The contract of the drawer and each endorser is, that the bill should be paid by the acceptor at its maturity—not before it is due; that it shall be paid according to its tenor and effect, that is, when it becomes due. If upon its being discharged before it becomes due the drawer inadvertently leaves his name upon the bill, he is but in the ordinary case of a party who has a bill in negotiation with his name upon it against his intention. It is in the hands of an innocent holder who has no notice that it has been discharged."

It is contended that Witte is not a *bona fide* holder of a negotiable paper for valuable consideration, because he did not acquire

title from one capable of transferring it, or in possession of it, with an apparent right to transfer it, and without notice of any defect in his title or right to transfer. The case of the *Central Bank of Brooklyn* vs. *Hammett et al.* (50 N. Y,, 158,) is referred to as authority for the position. The principle that governed the decision there may be admitted as correct, to wit: That the possession of such an instrument by a party to it only authorizes a presumption of such rights and obligations of the several parties as are indicated by the paper itself. Contrary to the conclusion which we have reached, as we think, both on principle and authority, as to the presumption arising from the possession of a bill by the acceptor before due, it holds that it could only have been in his possession "either for acceptance or after it had been paid, and in neither case would he have had the right to transfer it." In our view the restriction which would be thus imposed on the presumption arising from the possession by an acceptor of a bill before maturity is not in accordance with the rules pertaining to negotiable securities, and, if adopted, would so affect their operation as to deprive them of many of the valuable purposes which they afford the public as a most convenient medium of exchange.

It may not be out of place to say that in the case just referred to Peckham, J., dissented from the conclusions of his brethren.

The loss of Mrs. Williams is to be attributed to her own neglect. By leaving the drafts with Kirkpatrick, with blanks in the dates, names of payees and time of payment, against all wrong intention on her part, she afforded him the means of perpetrating a fraud either on herself or some innocent third party. Between them, who should bear the loss? Does not every dictate of right sanction the rule of law applicable to agencies, which declares "that where one of two innocent parties must suffer through the fraud and negligence of a third party, the loss shall fall upon him who gave the credit or enabled such person to commit the wrongs?"

The presiding Judge, without any exception to the report of the Referee to the character of the instrument sued upon, holds that one of them is not a bill of exchange because drawn on J. & J. D. Kirkpatrick, requesting the drawees to pay to their own order a certain sum of money, while a bill of exchange presupposes a duty on them to pay to some other than themselves. The only authority relied on in support of the position is found in Story on Bills, § 35. With the accustomed deference that is due to so distinguished a jurist as the late Mr. Justice Story, we are obliged to say that

the proposition is not sustainable on either principle or authority. We are the more emboldened to say so because, in the same Section, the learned writer thus expresses himself: "Nay, the drawer may at once become drawer, payee and drawee; as, for example, if he should draw a bill on himself, payable to his own order at a particular place, naming no drawee, and then should endorse it over, the endorsee might sue him as acceptor of the bill or as maker of a promissory note, at his election." And in Section 36 he says "the drawee and the payee may be also one and the same person." But in *Wildes* vs. *Savage*, (1 Story, 29,) he lays down the rule in direct contradiction to his affirmation cited by the presiding Judge to sustain his own conclusion. We quote the very words of Justice Story: "The argument is that the bill is not a regular bill of exchange because it is drawn by Russel & Co., payable to Wildes & Co., who are the drawees of the bill. * * * An instrument is not the less a bill of exchange because all the parties to it in the character of drawers, payees and drawees are not different persons. A bill drawn by a person payable to his own order has always been deemed to be a bill of exchange in the commercial sense of the phrase, and it would not cease to be such a bill if it should be endorsed by the drawer payable to the drawee. Now, such a bill so endorsed differs in nothing substantially from the present bill. In truth, where the bill is negotiable, and contains a drawer, a payee and a drawee, it is, in a commercial sense, a bill of exchange, although one or more of the parties shall fill a double character.'

Mr. Chitty, in his work on Bills, page 25, says: "It is not, however, necessary that there should be three parties to a bill; there are sometimes only two; as where a person draws on another payable to his own order; and, indeed, a bill will be valid where there is only *one* party to it, for a man may draw on himself payable to his own order. In such cases, however, the instrument may be treated as, in legal operation, a promissory note, and declared on accordingly, but in practice it is usual to declare upon the instrument as if it were a bill not admitting the identity of drawer and drawee." The objection thus taken by the presiding Judge to one of the bills cannot prevail, and, in conformity with our views herein expressed, the judgment must be set aside and the case remanded to the Circuit Court for a new trial. It is so accordingly ordered.

*Wright*, A. J., and *Willard*, A. J., concurred.