By the Court. Sandford, J.
The objection to Ray’s competency as a witness for the plaintiff, was pressed with great earnestness on the argument, and if well founded, is fatal to the plaintiff' ’s case ; for he is the only witness to some facts without which the action cannot be maintained. It is said, first, that Ray, on the assumption that he was an agent and not the purchaser of the note, is liable to the plaintiff for the costs of the suit, in the event of the latter’s failure. But this view of the matter is clearly erroneous. Whatever may have been the misconduct of an agent, it does not subject him to the costs of an unfounded suit, brought by his principal against a stranger, for the redress of the injury. (1 Greenl. Ev. § 396.) Next, it is urged that Ray is identified in interest with the plaintiff; a recovery by the latter will pay his debt incurred by the perversion of the note; that his interest is not balanced, because he has an absolute legal defence on the ground of usury, to any suit which the defendant may bring against him; and that the record in this suit, will be evidence in his favor.
As to these propositions, we say, first, that the record will not be evidence either for or against him. Such a consequence does not follow from his relation to either of the parties. Towards the plaintiff, he stands as a wrongdoer, in the disposal of the note. Towards the defendant, he becomes a debtor for the money advanced, on the plaintiff’s recovering the amount of the note. If the plaintiff succeed in this action, and collect his *64 judgment, and should then sue Ray for his conversion of this and the other notes, it is true Ray could show in mitigation of damages, that the plaintiff had received the amount of this note of the defendant; but he would prove it precisely as he could prove the same fact, if the latter on the demand of the note, had been satisfied that it belonged to the plaintiff, and had ■ then paid him its proceeds.
It is an instance of balanced interest in the witness. (Marshall v. Davis, 1 Wend. 109.) Nor is this affected by the circumstance, that according to his testimony, the transactions between himself and the defendant were usurious. This was expressly decided by the late supreme court, in Jackson ex dem. Skinner v. Packard, (6 Wend. 415.)
The authorities cited by the defendant show, that where the whole credit on a sale is given to one person, acting ostensibly for himself, he is not a competent witness in behalf of the seller, to fix the whole or a part of the debt upon another, as a purchaser. They do not apply to a case where the witness is liable for the whole claim at all events, whether the one party or the other succeeds in the suit in which he is called. We have no doubt that Ray was a competent witness for the plaintiff.
The. defendant also objected to testimony of the agreement between Ray and himself, as tending to show former usurious transactions between them. This testimony was admitted, not to prove other usurious transactions, but to show on what terms the note in suit was deposited; and as there was no express agreement made at the time, this could-only be shown by proof of the original arrangement under which this affair took place.
On the merits of the case, the defendant claims protection as a purchaser of the note in good faith, for value. It is not alleged on the other side, that he had any notice of the fact that Ray was an agent and not the owner of the note ; but it is insisted that the defendant received the note as security for an usurious loan, and that having taken it on a contract made in violation of the law, it was not received by him in good faith. This is a point of some moment, in the law of commercial paper. It will be observed that there was no sale of this note to the defendant. If there had been a sale, there would have been no *65 difficulty. It is undoubtedly true, that the defence of usury is in general, personal to the party paying, or contracting to pay it. But the principle is not precisely applicable to this case. Here the defendant sets up against the true owner of a note, the great doctrine of the law merchant, that the holder of a negotiable bill or note, who has received it in good faith for value, before its maturity, may retain it against the whole world. Now the good faith, is a vital element of this doctrine. And can that be said to have been done in good faith, or in the usual course of trade, which is done contrary to the positive prohibition of a statute, and which the statute declares to be void? We are satisfied that it cannot. The principle is settled in Ramsdell v. Morgan, (10 Wend. 574;) and it is therefore unnecessary for us to argue the question at large. There an auctioneer made advances, on usurious interest, upon goods which had been fraudulently obtained from the owners. As he was ignorant of the fraud, he could have retained the goods against the owner, for his advances, provided they were made in good faith. But it Avas decided that the usury was fatal to his claim to be considered a bona fide purchaser.
The next ground of defence is, that the plaintiff did not show he Avas entitled to the immediate possession of the note, at the time he brought his suit; because Ray, by means of his checks and the subsequent payment of $200, acquired an interest in the note, or a lien upon it.
As to this point, the $200 may be laid out of víoav at once, because it was paid after Ray had parted with the note to the defendant. The giving of the checks does not affect the ease, They were loaned by Ray, with the intention no doubt of paying them at maturity out of the proceeds of the plaintiff’s notes, after he had procured them to be discounted. Being post dated, no one could take them prior to their maturity, as valid commercial paper. If they had been paid, it would have so far discharged the plaintiff’s claim for the tortious disposal of his notes. But as they were not paid, they ceased to be of any importance. They availed nothing to the plaintiff, and if there ever were a lien in Ray’s favor in respect of the checks, it ceased Avhen he transferred the notes Avithout' providing for the pay *66 ment of the checks. In short, the only pretence for asserting a lien by reason of the checks, is by connecting them with the notes as the mode by which the proceeds of the latter were to be paid to the plaintiff. And when that connection was severed by the wrongful disposal of the notes, so that their proceeds could no longer be used to pay the checks, there was no ground left for maintaining a lien.
But it is further insisted that the plaintiff, before bringing suit, should have tendered the cheeks and the $200 to the defendant.
We will say nothing of the obstacles to this claim, arising from the facts that the three checks were given in respect of six notes, and the $200 was paid on account of. three notes; while this suit relates to one, which does not correspond in amount with that sum or with either of the checks ; and the difficulty is not the fault of the plaintiff. But we go further, and say that we perceive no reason whatever for requiring the plaintiff to tender the checks to the defendant. As to the $200, it was paid to the plaintiff on the 12th of May. Whatever rights or interests the defendant acquired in the note, were acquired at least a week before that time. He therefore had no interest in the $200 ; which can be regarded only as a payment made by Ray on account of the plaintiff’s claim against him for the amount of the notes.
If any further answer to the lien claimed were necessary, it might be added, that the defendant having parted with the note, no tender was necessary; and the lien, if one existed, would only avail him in mitigation of damages. (Saltus v. Everett, 20 Wend. 267.)
We have spoken of Ray’s disposal of the notes as having been tortious. This is shown by Murray v. Burling, 10 Johns. 172. The exception mentioned by the court in that case, (on page 175,) does not apply, because, although here was a general authority to procure the note to be discounted, there was none to pledge it on usury for the agent’s benefit. (And see Reynolds v. Shuler, 5 Cow. 323.)
This brings us to the point, that no conversion of the note by the defendant was proved. The facts proved were, that on the *67 !oth of June, the plaintiff demanded the note of the defendant, without obtaining it or its proceeds. The defendant’s answer to the demand was, that he did not hold the note. This was true, for he had sold it, and received the proceeds a week before. The case of Everett v. Coffin, (6 Wend. 603,) is an authority that this was sufficint evidence of a conversion. Much of the defendant’s argument, and most of his authorities on this point, are inapplicable, because his possession of the note was tortious from the outset, as against the plaintiff.
The only subject remaining to be examined, is the verdict of the jury on the fact submitted to them. It is said the testimony shows a clear and perfect sale of the note to Ray; that there was no conflict of evidence, and nothing to go to the jury ; and at all events, the verdict is clearly against the weight of evidence. All the testimony on the subject was given by Ray, and is found in his statements and the papers which he produced. And it is very true that his direct statements were distinct and positive, that he purchased the note in question. There was, however, much developed in his occupation, in the nature and course of his business with the plaintiff, his cotemporary and subsequent acts, and the written memoranda; which indicated an agency, and rebutted the idea of a sale. The testimony was conflicting, and the judge would not have been warranted in withholding its consideration from the jury. He submitted it to them, with the instruction that a party calling a witness, was not bound by his testimony in all its parts; but might satisfy the jury from facts and circumstances stated by the witness himself, that the witness was mistaken in some of his statements and conclusions, while he was correct in others.
This instruction was perfectly correct in point of law, and was proper in this instance to prevent the jury from being misled by the familiar proposition, that a party cannot impeach his own witness.
We have considered the testimony, and find no sufficient cause for interfering with the conclusion of the jury. We are not prepared to say that we, as jurors, would have come to a different conclusionj much less can we say that there is any *68 such preponderance of evidence as to authorize us to set their verdict aside.
The plaintiff is entitled to judgment on the case.