SECOND NATIONAL BANK OF MORGANTOWN, Appellant, *v.* CHARLES WESTON, as Executor of ABIJAH WESTON, Deceased, Respondent, Impleaded with Others.

1. APPEAL — QUESTION OF LAW — DIRECTION OF VERDICT. The unanimous affirmance by the Appellate Division of a judgment, entered upon a verdict directed on uncontroverted evidence, does not preclude the Court of Appeals from considering whether the evidence justified the direction of the verdict.

2. TRIAL — DIRECTION OF VERDICT — GOOD FAITH. A bank which has discounted from time to time a series of notes upon the representations of the payee and of the firm which made them, that they were given for value, and which were promptly paid, is not chargeable with negligence or bad faith, and a verdict is properly directed in its favor on that issue, where it subsequently discounted accommodation notes executed to the same payee by a member of the same firm, in the name of the firm, but after its dissolution, of which fact no sufficient notice was given, where the payee represented that the notes were based upon a valid consideration.

3. EVIDENCE — BAD FAITH. The purchase by a bank of notes at a discount of eight per cent per annum, when the legal rate of interest is six per cent, is not such an excessive rate of discount as to warrant the inference of bad faith.

4. TRIAL — INTERESTED WITNESS — CREDIBILITY. The evidence of a party to an action is conclusive, and his credibility is not presented as a question of fact where his testimony is not contradicted by direct evidence nor by any legitimate inference from the evidence, and is neither opposed to the probabilities, nor in its nature surprising or suspicious.

*Second Nat. Bank* v. *Weston,* 46 App. Div. 634, reversed.

(Argued June 18, 1902; decided October 7, 1902.)

APPEAL from a judgment entered January 4, 1900, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant on the verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. S. Cary* for appellant.   The direction of a verdict for
the defendant, and the affirmation of that direction by the
appellate court was error in law.   Plaintiff was clearly entitled
under the undisputed evidence and the law to the direction
of a verdict in its favor.   (*B. B. Bank* v. *Hoge*, 35 N. Y. 66;
*Dalrymple* v. *Hillinbrand*, 62 N. Y. 11; *Hoge* v. *Lansing*,
35 N. Y. 136; *Cowing* v. *Altman*, 71 N. Y. 439; *Cheever* v.
*P. R. R. Co.*, 150 N. Y. 59; *A. E. Nat. Bank* v. *N. Y. B.
Co.*, 148 N. Y. 698; *Murray* v. *Lardner*, 2 Wall. 110.)
The fact that eight per cent interest was taken, outside the
question of usury which is not pleaded, cannot affect the ques-
tion of good faith.   (1· Daniels on Neg. Inst. §§ 777–779;
*Cheever* v. *P. R. R. Co.*, 150 N. Y. 65.)

*J. H. Waring* for respondent.   The notes in suit were
invalid as between the parties to them.   (*Smith* v. *Weston*,
159 N. Y. 194; *Bank, etc.,* v. *Weston*, 159 N. Y. 201.)   It
has been found that the plaintiff was not a *bona fide* holder
of the notes in suit, and that finding is conclusive on this
court.   (*Smith* v. *Weston*, 159 N. Y. 194; *Thompson* v.
*Simpson*, 128 N. Y. 270; *Koehler* v. *Adler*, 78 N. Y. 287;
*Stratford* v. *Jones*, 97 N. Y. 586.)   The burden of proof was
on the plaintiff to show it was a *bona fide* holder.   (*Smith* v.
*Weston*, 159 N. Y. 194; *Joy* v. *Diefendorf*, 130 N. Y. 6;
*C. N. Bank* v. *Diefendorf*, 123 N. Y. 191; *Nickerson* v.
*Ruger*, 76 N. Y. 279; *F. N. Bank* v. *Green*, 43 N. Y. 298.)
The proof offered by the plaintiff on the question of its being
a *bona fide* holder was not conclusive.   (*C. N. Bank* v.
*Diefendorf*, 123 N. Y. 191; *Elwood* v. *W. U. Tel. Co.*, 45
N. Y. 549; *Honegger* v. *Wettstein*, 94 N. Y. 252.)   The
interest of the plaintiff's cashier in the event, the rate of
interest charged, and the other circumstances in the case,
some of which are referred to above, were all evidence rais-
ing a question of fact, and the court's finding is conclusive
here.   (*Morrell* v. *Peck*, 88 N. Y. 398; *Kenney* v. *City of
Cohoes*, 100 N. Y. 623; *Meacham* v. *N. Y. S. M. B. A.*,
120 N. Y. 237.)

CULLEN, J. The action was brought against Wallace W. Weston, Orren Weston and Abijah Weston, as makers, and George E. Ramsey, as indorser, of three promissory notes, all bearing date December 21st, 1891, and payable respectively at twenty, twenty-one and twenty-four months after date, at the First National Bank of Olean, New York. The plaintiff is a national bank located at Morgantown, West Virginia about four hundred miles from Olean. The defendants Weston were, up to the 5th day of January, 1892, copartners carrying on a very large lumber business at Weston Mills near Olean, under the firm name of Weston Brothers. On that day the firm was dissolved but no notice of the dissolution was given in any other manner than by communication to two commercial agencies, and the plaintiff had no knowledge of the fact until November, 1893. In September, 1891, application was made by the payee, Ramsey, through the law firm of Cox & Baker, of Morgantown, to the plaintiff for the discount of certain notes of Weston Brothers held by him. On such application being made the plaintiff wrote to the First National Bank of Olean and received a letter from its cashier, stating the wealth of the makers, that the notes would be promptly paid and that the Olean bank would itself have discounted the notes but it did not have the available funds. The plaintiff wrote to the makers, Weston Brothers, and received an answer from that firm saying that the notes held by Ramsey were given for the purchase of real estate and were all right. It also wrote to several parties in Olean, with whom it had acquaintance, and was informed of the excellent business standing of the makers and that they were regarded as millionaires. On these reports the notes were discounted at the rate of eight per cent per annum, and the proceeds placed to the credit of Ramsey and paid out on his order. The notes were paid at maturity.

In May, 1892, other notes of the same character and apparently of the same date were discounted for Ramsey. On this occasion the plaintiff received another letter from Weston Brothers saying that " the paper that Ramsey had,

made by that firm, was some of the same realty transaction which it (the plaintiff) had already discounted" and as to which the firm had written to it, and that they would be paid as usual. These notes were also paid in due course. Finally, in June, 1893, the plaintiff discounted the three notes in suit.

On the trial it was proved by the defendant that the notes were not given for any consideration, but were made by Wallace W. Weston, one of the members of the firm, simply for the accommodation of the payee, Ramsey, and that though they bore date December 21st, 1891, they were not actually made until a year after the firm had been dissolved. It further appeared that Abijah Weston, the respondent's testator, had, for some time prior to the dissolution of the firm, been aware that Wallace W. Weston was giving firm notes for his personal transactions and for the accommodation of others, and had remonstrated with him on his action. For this reason the firm was dissolved and the business turned over to a corporation, but, as stated, no proper notice was given of such dissolution, nor of the fact that Wallace W. Weston had improperly used the firm paper.

We have decided in *Bank of Monongahela Valley* v. *Weston* (159 N. Y. 201) that the notice of dissolution given by communication to the commercial agencies was insufficient. The proof for the respondent established that the notes were fraudulently issued by the defendant Wallace W. Weston as against his former copartners. It thereupon was incumbent upon the plaintiff to show that it was a *bona fide* holder of the notes for value, and the only question to be considered on this appeal is whether it so conclusively established that fact as to be entitled to the direction of a verdict in its favor.

Before a discussion of that question is had there is to be considered a claim made by respondent, that we are concluded by the unanimous decision of the Appellate Division. It is said that where each party requests the direction of a verdict, and neither asks to go to the jury, the case presented on appeal is the same in effect as if the case had been duly submitted to the jury and they had found a verdict for the

party in whose favor the court directs a verdict. It is then contended that such being the effect of a directed verdict, a unanimous affirmance is conclusive upon us that there was evidence to justify the direction of a verdict to the same extent as if the affirmance was of a judgment entered upon the verdict of a jury. The first proposition is true, however, only to a limited extent. A directed verdict, when no request is made to go to the jury, is the same in effect as the verdict of a jury only when the disposition of the cause depends upon the determination of some question of fact. In that case it may be that a unanimous affirmance is conclusive. But in such a case it is never necessary for the respondent to invoke the rule of a unanimous affirmance, for this court is precluded from examining any question of fact, whether the affirmance is unanimous or not. But the right of a party to have a verdict directed in his favor on uncontroverted evidence presents merely a question of law, and that question of law is expressly reserved for our consideration, both by the Constitution and by the provisions of the Code, except in the single case where the cause is submitted to the jury and the verdict rendered by it unanimously upheld by the Appellate Division.

While, after proof had been given on behalf of the defendants that the notes were fraudulently and illegally issued, it became incumbent upon the plaintiff, in order to succeed, to establish that it had acquired the notes in good faith for value, still the question was solely one of good faith. " The rights of a holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence." (*Magee* v. *Badger*, 34 N. Y. 247 ; *Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 202 ; *Am. Ex. Nat. Bank* v. *N. Y. Belting & P. Co.*, 148 N. Y. 698.) Negligence of the holder is simply material so far as it goes to show lack of good faith. " The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted

precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide*, his title, according to settled doctrine, will prevail." (*Cheever* v. *Pittsburgh, S. & L. E. R. R. Co.*, 150 N. Y. 59, 66.)

Assuming the truth of the evidence given on behalf of the plaintiff, there is no circumstance disclosed by the record from which there can be imputed to it negligence, much less bad faith; on the contrary, it seems to have acted with great caution and care. We shall not elaborate the discussion, but simply say we do not see what more the plaintiff could have done if it was to discount the notes at all. The respondent insists that the discount of the notes at eight per cent per annum (the legal rate in West Virginia, as in this state, being six per cent) was evidence of bad faith. There is one authority in this state that justifies the claim, the case of *Hall* v. *Wilson* (16 Barb. 548). Before considering that case it is necessary to note two earlier decisions. In *Ramsdell* v. *Morgan* (16 Wend. 574) Judge COWEN declared it to be a solecism to say "a *bona fide* purchaser *on usury*." In *Keutgen* v. *Parks* (2 Sandf. 60) Judge SANDFORD said (p. 64): "Can that be said to have been done in *good faith*, or in the usual course of trade, which is done contrary to the positive prohibition of a statute, and which the statute declares to be void? We are satisfied that it cannot." In each of those cases the contract, under which were delivered in the first case chattels and in the second a note, was usurious on its face and known to be so to the plaintiff. In *Hall* v. *Wilson* (*supra*) the Supreme Court went one step farther. There the action was on a promissory note payable to a named payee, or bearer, and given for the purpose of taking up another note for the same amount. A third party abstracted the note and sold it at a discount to the plaintiff. Usury was not pleaded, but it was held that as the note was in fact usurious because it had no lawful inception until its transfer to the plaintiff, the usury destroyed the *bona fides* of the transaction. I doubt if any of these cases remain authorities on the proposition for which they have been cited.

In *Williams* v. *Tilt* (36 N. Y. 319) it was held by this court that the *bona fides* of a holder or purchaser depends upon his knowledge of or privity with the fraud by which the property has been obtained from the original owner, and not on the existence of usury in the contract between him and the person from whom he acquires it. The case of *Hall* v. *Wilson* (*supra*) is not referred to in the opinion, but the cases of *Ramsdell* v. *Morgan* (*supra*) and *Keutgen* v. *Parks* (*supra*) are practically overruled. On the authority of *Williams* v. *Tilt* it was held by the Supreme Court in the fourth department that usury did not necessarily destroy the *bona fides* of a holder of a promissory note. (*Miller* v. *Crayton*, 3 Thompson & Cook, 360.) The argument of the learned judge who wrote in *Hall* v. *Wilson* (*supra*), that because the note in that case was usurious and void, had usury been pleaded, the plaintiff could not have acquired it in good faith, seems to me essentially unsound. It proves too much. Had the plaintiff Hall transferred the note before maturity to another person for the legal discount or less, the note under our statute would have been equally void in the hands of such purchaser as in the hands of Hall. It would be idle, however, to suggest that such a purchaser had not taken the note in absolute good faith. It is clear, therefore, that the question of usury does not necessarily determine the question of good faith. Whatever force there may be in the argument of the *Ramsdell* and *Keutgen* cases, that a person cannot be deemed to acquire a note in good faith when he receives it through a transaction which is made criminal, that argument can have no application to the case of one who has taken a note on a purchase which, if the circumstances represented to him were true, was entirely legal.

The notes in suit were discounted by the plaintiff on the representation of Ramsey that they had been given to him for value, in which representation as to the first notes of the series discounted the makers joined. By reason of those representations as to the earlier notes the plaintiff could have recovered against both parties, and as to the notes in suit as

against the payee, even though it were not a national bank
but a natural person. (*Payne* v. *Burnham*, 62 N. Y. 69.)
It is the right of a person to refuse to loan money at the
legal interest and to require a valid security to be given, which
he can purchase at any rate of discount agreed upon. (*Union
Dime Savings Inst'n* v. *Wilmot*, 94 N. Y. 221.) The fact,
therefore, that a negotiable security is purchased at a discount
exceeding the legal rate has no effect on the question of the
*bona fides* of the purchaser except in one respect which does
not exist in the present case.

The discount taken may be so great as to impeach the good
faith of the purchaser, the same as a chattel may be bought at
so much under its true value as to justify the inference that
the purchaser knew or suspected that it had been dishonestly
acquired by his vendor. *Hall* v. *Wilson* has been cited in
several later cases, but an examination of those cases will show
that there the rate of discount was so excessive as to warrant
the inference of bad faith. In *Canajoharie Nat. Bank* v.
*Diefendorf* (*supra*) the notes of a perfectly responsible maker
were purchased at a discount of from fifteen to eighteen per
cent. from their face value. In *Vosburgh* v. *Diefendorf* (119
N. Y. 357) the notes of the same maker were purchased for
fifty per cent of their face value. In the present case the rate
of discount, eight per cent per annum, is not sufficiently great
to predicate upon it any inference of bad faith. On the con-
trary, it would be unreasonable to suppose that the plaintiff
knowingly took a doubtful security for an excess of interest
amounting to about one per cent on the face value of the notes.
I think the true rule is stated in *Gould* v. *Segee* (5 Duer, 260):
" Hence, when usury is not set up as a separate defense, unless
it is so gross as to raise the presumption of fraud, the proof of
its existence may be justly disregarded. Where an accommoda-
tion note is purchased at a rate of discount exceeding that of
lawful interest, the transaction, in judgment of law, is usurious,
but the mere fact that it is so is no evidence of the bad faith
of the purchaser; is no evidence that he knew, or suspected,

17

that the holder of the note, from whom he derived his title, had no right or authority to transfer it."

The further contention is made by the respondent that as the circumstances attending the discount of the note were proved by the testimony of the cashier, who was also a stockholder in the plaintiff, he was an interested witness and his credibility presented a question of fact for the jury, or in this case as there was no request to go to the jury, for the court to pass upon. The rule invoked by the respondent is not of universal application. "Generally, the credibility of a witness, who is a party to the action and, therefore, interested in its result, is for the jury; but this rule, being founded in reason, is not an absolute and inflexible one. * * * Where, however, the evidence of a party to the action is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and it is not opposed to the probabilities; nor, in its nature, surprising or suspicious, there is no reason for denying to it conclusiveness." (*Hull* v. *Littauer*, 162 N. Y. 569, 572.) In that case the direction of a verdict on the testimony of a party to the action was upheld. In the present action it is not true that the plaintiff's case is based entirely on the testimony of its cashier. The genuineness of the letters of Weston Brothers, the makers, to the plaintiff is admitted. They are in the record; also the letters of Ramsey, the payee. The conduct of the plaintiff was natural, and the story told by the cashier reasonable and probable. The plaintiff's business was the discount of paper. The evidence suggests no way in which there was any likelihood of information reaching the plaintiff of the dissolution of the Weston firm or of the notes having been issued for improper purposes. The cashier testified that the proceeds of the notes were drawn out by the checks of Ramsey, who was a witness and evidently not hostile to the defendants. No attempt was made to prove that Ramsey did not receive the amount of the notes. What then was to be left to the jury? — to arbitrarily find, without any evidence, that the plaintiff did not discount the notes, or that in some unexplained way it had acquired

knowledge of their character?  We think not.  The plaintiff on the evidence was entitled to a direction in its favor.

The judgment appealed from should be reversed and a new trial ordered, costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, MARTIN and VANN, JJ., concur.

Judgment reversed, etc.