SIEGMEISTER et al. v. LISPENARD REALTY CO.

(Supreme Court, Appellate Term. November 29, 1907.)

1. BILLS AND NOTES—CHECKS—HOLDERS IN DUE COURSE.

A check was given contractors to pay off their men, on the supposition that the architect's certificate had been obtained. On discovery that the certificate had in fact been refused, payment on the check was stopped. On the evening of the same day the payees negotiated the check to plaintiffs, who had previously cashed checks for the payees, but had no definite knowledge as to their financial responsibility. The payees did not pay off their men and abandoned the work. Held, that the plaintiffs were holders in due course, within the meaning of sections 91, 95, 96, of the negotiable instrument law (Laws 1897, p. 732, c. 612).

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 819.]

2. EVIDENCE—WEIGHT AND SUFFICIENCY.

The evidence of a party to an action is conclusive, and his credibility is not presented as a question of fact, where his testimony is not contradicted by direct evidence or by legitimate inference therefrom, and is neither opposed to the probabilities nor in its nature surprising or suspicious.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2438.]

3. BILLS AND NOTES—CHECKS—BONA FIDE HOLDERS—EVIDENCE.

On an issue as to the good-faith purchase of a check, evidence that the purchaser of the check filed a petition in bankruptcy two months after the purchase is immaterial and outside the issue.

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Barnet Siegmeister and others against the Lispenard Realty Company on a check. From a judgment for defendant, plaintiffs appeal. Reversed.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Henry S. Schimmel, for appellants.
Gratz Nathan, for respondent.


ERLANGER, J.   There is no substantial dispute as to the facts in this case. The defendant entered into a contract with the firm of Kalt & Zwerling to do the carpenter work on a building in course of erection. The contract provided that payment should be made as the work progressed, and upon the certificate of one Keister, the architect. On October 17, 1906, one Wilson, the president of the defendant company, was at the building, and either Kalt or Zwerling asked him for a check for $480, saying that he wanted to pay off his men. In the belief that the architect's certificate had been obtained, Wilson drew his check for that amount, payable to the order of Kalt & Zwerling and gave it to one of said firm. Within a few minutes afterwards Wilson learned that a certificate had been refused or withdrawn from the contractors by the architect. Thereupon Wilson immediately demanded the return of the check, which was refused. Payment of the check was stopped. On the evening of the same day, Zwerling, one of the payees of the check, called at the plaintiffs' place of business and asked one of them to cash it, saying he wanted to pay off his men. The plaintiffs were in the hardware business, and had previously cashed checks for Kalt & Zwerling, and had sold them hardware on account, although they had no definite knowledge as to their financial responsibility. They gave Zwerling $420 in cash that night, and the remaining $60 the next morning, and upon presenting the check at the bank discovered that payment thereon had been stopped. They then demanded from the payees the money, and were told by them that they could not pay it. It also appears that the payees of the check failed to pay their men and abandoned their work upon the building at or about this time. Plaintiffs then brought this action against defendant, and from a judgment in defendant's favor they appeal.

That portion of the negotiable instrument law (Laws 1897, p. 719, c. 612) applicable to the foregoing facts is contained in sections 91, 94, 95, 96, 97, and 98, which read as follows:

"Sec. 91. A holder in due course is a holder who has taken the instrument under the following conditions:   (1) That it is complete and regular upon its face.   (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such were the fact.   (3) That he took it in good faith and for value.   (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"Sec. 94. The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any sig-

nature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates in breach of faith. or under such circumstances as amount to a fraud.

"Sec. 95. To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith.

"Sec. 96. A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

"Sec. 97. In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect to all parties prior to the latter.

"Sec. 98. Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. * * *"

The position taken by the respondent is that, upon the facts shown and the law applicable thereto, it devolved upon the plaintiffs to show affirmatively "that they acquired the title as a holder in due course"; and it is urged that they have not sustained the burden cast upon them of so doing. On the other hand, the appellants claim that they are well within the provisions of sections 91, 95, and 96 above quoted. The testimony of Wilson, the defendant's president, is to the effect that the contractors performed some work upon the building at the time the check was given, but the amount thereof does not appear, and that the architect's certificate had been given and withdrawn because it was claimed the work was not properly done. It cannot, therefore, fairly be said that the check was given wholly without consideration, and whether or not fraud is predicable upon such a state of facts need not be considered. I am of the opinion that the plaintiffs showed themselves to be holders of the check in due course.

One of the plaintiffs, who cashed the check, testified that he had not the slightest knowledge as to how the payees obtained it, that he had known them about two years, that the application to him was made before he closed his place of business in the evening, that he knew the defendant company, and he detailed fully and fairly the circumstances under which the check was cashed. His testimony was uncontradicted, and all of it was consistent with good faith, and showed a payment of full consideration without knowledge of any infirmity attached to its giving. No good reason for rejecting his testimony appears, and it has repeatedly been held that "the evidence of a party to an action is conclusive, and his credibility is not presented as a question of fact, where his testimony is not contradicted by direct evidence, nor by any legitimate inference therefrom, and is neither opposed to the probabilities nor in its nature surprising or suspicious." Second Nat. Bank v. Weston, 172 N. Y. 250, 64 N. E. 949.

Upon the trial, when one of the plaintiffs was being cross-examined by the defendant's attorney, he was asked:

"Q. There were bankruptcy proceedings against you since then, wasn't they? A. No, sir; there was a petition filed."

This was objected to by plaintiffs' counsel. Upon being asked by the court the object of this line of examination, the defendant's counsel said:

"My object is to show, what I expect to show, that the circumstances under which these plaintiffs claim to have cashed the check were such as, if he really did cash it, led him or should have led him to be cautious in regard to the transaction. Your honor, the rule of law is in this case that I am entitled to go very fully into all the circumstances in connection with the cashing of this check."

The counsel then elicited from the witness that it was on December 18, 1906, that the petition in bankruptcy was filed, and that no schedule of debts or list of assets were ever filed or made out. Nothing further was asked upon that subject. Plaintiffs' counsel then moved to strike out this testimony as being incompetent, irrelevant, and immaterial. This motion was denied, and an exception taken. The motion should have been granted, and the refusal was error. It would require a long stretch of the imagination to hold that the filing of a petition in bankruptcy by the plaintiffs on December 18th was of the slightest relevancy or materiality to the issues in this action, or tended in any way to cast suspicion upon the bona fides of the plaintiffs in cashing the check on October 17, 1906.

The judgment must be reversed, and a new trial ordered, with costs to appellants to abide the event.

GILDERSLEEVE, P. J., concurs. LEVENTRITT, J., concurs in result.