ELIZABETH CLANCY, as Administratrix of the Estate of PATRICK CLANCY, Deceased, Respondent, *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

Appeal — trial — negligence — whether there is any evidence to support a verdict directed by the court is a question of law reviewable in the Court of Appeals — in action for negligence there must be proof that injured person was free from contributory negligence.

The question whether there is any evidence to support a direction by a trial court to the jury, to find for the plaintiff and to assess the damages at a specified amount, in an action to recover for the death of plaintiff's intestate caused by the alleged negligence of defendant, is a question of law reviewable in the Court of Appeals.

In an action to recover damages for a death through defendant's negligence the courts have no right to conjecture that the intestate was free from negligence. It is incumbent upon the plaintiff to give proof thereof, and where plaintiff's evidence furnishes nothing more than a basis for speculation, such evidence is inadequate to support a verdict directed for the plaintiff.

*Clancy* v. *N. Y., N. H. & H. R. R. Co.*, 133 App. Div. 119, reversed.

(Argued January 13, 1911; decided March 21, 1911.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 9, 1909, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*I. R. Oeland* and *Charles M. Sheafe, Jr.*, for appellant. The verdict having been directed by the trial court the Court of Appeals can determine whether or not there is any evidence to sustain the judgment. (Code Civ. Pro. § 191, subd. 4; *S. Nat. Bank* v. *Weston*, 172 N. Y. 250.) There is no evidence in the case which would justify the court or jury in finding the plaintiff's intestate free from contributory negligence. (*Lamb* v. *U. Ry. Co.*, 195 N. Y. 266; *Rupert* v. *B. H. R. R. Co.*, 154 N. Y. 90; *Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 421; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330, 332; *Zaun* v. *L. I. R. R. Co.*, 139 App. Div. 719; *Goldberg* v. *Herman*, 136 App. Div. 533.)

*Michael J. Tierney* for respondent. The rule of unanimous affirmance applies, since the verdict is not to be deemed a directed one within the meaning of the Constitution, but, by the consent of both parties, a decision by the court of the issues or questions involved rather than by the jury. Therefore, the question whether the verdict is supported by any evidence is not open to review in this court. (*Westervelt* v. *Phelps*, 171 N. Y. 212; *Thompson* v. *Simpson*, 128 N. Y. 283; *Smith* v. *Weston*, 159 N. Y. 194.) There was no eyewitness to the accident, which gives the case the benefit of the legal rule that but slight evidence is necessary to make the question of contributory negligence one of fact for the jury. (*Woodworth* v. *N. Y. C. & H. R. R. R. Co.*, 55 App. Div. 23; 170 N. Y. 589; *McDonald* v. *Simpson & Crawford Co.*, 114 App. Div. 859; *Flannigan* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 773; *Irish* v. *U. B. & P. Co.*, 103 App. Div. 45; 183 N. Y. 508.)

COLLIN, J.  The action is to recover damages for the alleged negligence of defendant by which the death of her intestate was caused. ₒ It is under the Employers' Liability Act (Laws 1902, chap. 600). The intestate, an employee of defendant, was killed at about six o'clock in the afternoon of October 22, 1905, at a point of defendant's railroad, near Bartow station,

in the city of New York. There the railroad runs east and
west and has two tracks of which the southern is the east-
bound and the northern the west-bound. Upon either side of
the railroad, at the station, was a station platform. West of
the station, and at least four hundred feet therefrom was a
crossover track from the one track to the other and connect-
able with each by switches. East of the station the two
tracks were likewise connected by a crossover, with switches.
Through several weeks prior to October 22, 1905, the defend-
ant ran on Sundays and holidays, beginning at four o'clock
in the afternoon, hourly, a special passenger train from the
New York station to Bartow station and return. Bartow
station is east of the New York station, and ordinarily the
train ran from New York on the east-bound track with the
engine and tender at the head of the train, but backing so
that the tender was at the front of the train, and the train
thus constituted would leave the east-bound track at the
western crossover, over which it would pass to the west-
bound track, thence east to the station platform, reaching
which the engine would be uncoupled and with the tender
proceed to the eastern crossover, thence to the east-bound
track, thence forward to the west crossover, thence back-
ward over that crossover to the west-bound track and the
head (the rear of the incoming train) of the train to return
to New York. The train which caused the death of the
intestate, consisting of tender, engine and six coaches, did
not follow the usual method, but, under a special order, left
the east-bound for the west-bound track, about four miles
west of Bartow station, and ran east upon the west-bound
track, tender first, to Bartow station. The testimony in
plaintiff's behalf upheld the inference that it approached the
station without warning by whistle or bell and without head-
light, and a freight train of thirty-five or forty cars was at
the same time passing eastwardly on the east-bound track.
The freight train was running 20 or 25 miles an hour, on an
up-grade, was puffing, emitting black smoke, and its passage
was accompanied by considerable rattling. Darkness had

arrived and it was commencing to rain. At the station the engine was uncoupled, and with the tender ran as usual to and over the eastern crossover, the east-bound track, the western crossover, and as they were backing upon the west-bound track to the head of the train to return to New York, the body of the intestate was discovered under the rear car of the arriving and the head car of the outgoing train, about fifteen feet from its end, lying just inside of the outer rail, with the feet to the west and the head almost dissevered. It was about midway between the crossover and the station platform or not less than two hundred feet from either. At the same time was found, about ten feet further west, the body of a fellow-workman. The intestate had been for the eleven years last prior to his death the section foreman on this particular section. At two o'clock in the afternoon of that day, he took at New Rochelle the train, east bound, for Bartow station. Between four and five o'clock he was about one-quarter of a mile west of Bartow station in a boat fishing, and the evidence is silent concerning his subsequent acts. The switches of the crossovers were operated by the brakeman of the train as and when their use required. One of intestate's duties was to pull, or have one of his men pull, at about four o'clock in the afternoon or just before the first special train arrived, the spike which held in place the rails of the crossover and to replace, or have one of his men replace, the spike after the last special train of the day had left. The tools used in those acts were a spike bar and a spiking maul. No tools were found where the body of the intestate was. There was testimony that this six o'clock train was the last special train for the day. Prior to this occasion the special train had run, although infrequently, eastwardly to Bartow station on the west-bound track. The intestate was familiar with the times and methods of operating the trains, and was required by the rules of defendant to know the time tables and be on the lookout for trains. Through one-quarter of a mile from the station to the west the track was straight and the smoke of the freight train did not obscure the special train.

The respondent contends that the intestate standing near the junction of the western crossover and the west-bound track, waiting for the freight train to pass upon the east-bound track and believing that behind it upon that track was the special, was struck by the special in its passage upon the west-bound track to the station.

At the close of the evidence the defendant asked the court to direct a verdict in its favor and the plaintiff made the same request in her behalf. The court then directed the jury to find for the plaintiff and to assess the damages at the sum of eighteen thousand dollars; the defendant excepted thereto. The question whether there was any evidence to support the findings of the court and the directed verdict is a question of law reviewable by us. (*Second Nat. Bank of Morgantown* v. *Weston,* 172 N. Y. 250.)

We will assume, without further statement or discussion, that the facts justified the finding that the defendant was negligent in running the train without headlight or warning signal. The facts do not, however, furnish any support for the finding that the intestate was free from negligence contributing to his death. They do not tend to establish directly or by reasonable inference that the intestate was struck by the train without negligence on his part. He was not at work upon or near the track. No proven duty required him to be there. The sole reason for his presence in that locality was that he might respike or have one of his men respike the rails of the crossover track after the last special train had left Bartow station for New York. This duty did not require that he should be at or near the switch or upon or near the track. Its performance permitted him to remain within the station, or at any other absolutely safe place until after the train had arrived and departed. The evidence does not tell us where he was when hit or why he was there, what he was doing or why he was doing it, whether he was sitting or standing or awake or asleep. It does not contain a fact upon which can stand the inference that he was at his work or in the performance of any duty or exercising care, thought or attention in

regard to the tracks or the train. How he came to be hit is a mystery unsolvable through any fact before us. The trial court had and we have no right to conjecture that the intestate was free from negligence; it was incumbent upon plaintiff to give proof thereof. She did no more than furnish a slender basis for speculation, and that is inadequate for the finding and verdict.

The judgment should be reversed and a new trial ordered, costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and HISCOCK, JJ., concur.

Judgment reversed, etc.