LeRoy Williams, Claimant, *v.* State of New York, Defendant. (Claim No. 28117.)

Court of Claims, November 20, 1947.

*W. G. Shankenbery* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Frank M. Noonan* of counsel), for defendant.

LAMBIASE, J.  On September 25 and September 26, 1945, and again on October 2, 1945, the basement of claimant's building,

situate on the northeast corner of Edwards Street and Oriskany Boulevard (State Highway Route 5A), in the village of Yorkville, New York, was flooded by surface waters overflowing from storm-water sewer facilities located in the vicinity thereof, which facilities had been constructed and which were, at all times in the claim mentioned, maintained by the State of New York. As a result thereof groceries and provisions located in said basement were damaged and destroyed, and other damage was done to claimant's building.

This claim has been filed to recover the amount of said damages thus sustained by the claimant upon the contention that they were occasioned by reason of the fact (A) that the aforesaid storm-water sewer facilities constructed by the State in the vicinity of claimant's property had been negligently constructed by it, and (B) that the State was negligent in maintaining said storm-water sewer facilities in said condition.

The State, on the other hand, asserts that said storm-water sewer facilities were constructed in a proper and sufficient manner and according to good engineering practice; that they were sufficient as constructed for ordinary purposes and took care of usual rainfalls, plus ordinary flood conditions that might be anticipated; that the damage to claimant's property was not caused by any negligence on its part; and, lastly, that since the damage was caused by overflowing surface waters, it was *damnum absque injuria.*

The improvements on claimant's property aforesaid consisted of a building containing apartments on the top floor, a salesroom on the ground floor, and storage space in the basement, the last mentioned being used, at all times in the claim mentioned, for the storage of groceries and provisions. This basement was reached by means of a descending concrete ramp through an entrance on Edwards Street aforesaid, and the floor or bottom thereof was at least three feet lower than the elevation of Edwards Street and of Oriskany Boulevard.

Edwards Street is 45 feet wide and is hard surfaced with oil and stone for about 30 feet of its width. It has no curbing in front of the entrance to the basement of claimant's property, and has drainage ditches along its sides. It runs in a general northerly and southerly direction making connection with Oriskany Boulevard at its southerly terminus but not intersecting said boulevard. Oriskany Boulevard was constructed by the State of New York over the bed of the Old Erie Canal. It has a concrete pavement 30 feet wide with oiled gravel shoulders on both sides thereof. It runs generally east and

west, and there is no curbing along its sides. The land surrounding Oriskany Boulevard has a general slope from south to north, which slope continues some distance to the north of said boulevard and up Edwards Street.

At or near the northeasterly corner of Edwards Street and Oriskany Boulevard aforesaid there is located in the shoulder or gutter of said boulevard, north of the pavement, a catch basin the top of which is about 27 inches in diameter. On the opposite or northwesterly corner of said street and of said boulevard there is another catch basin similarly located in the shoulder or gutter of said boulevard, north of the pavement, the top of which catch basin is about 28 inches in diameter. We shall hereinafter refer to these catch basins as "C.B. #1" and "C.B. #2" as they are thus marked on claimant's exhibit 8 in evidence.

A 12-inch concrete pipe connects the afore-mentioned catch basins which, as is shown on claimant's exhibit 8, are 44.16 feet apart. Diagonally across said boulevard from "C.B. #2", slightly to the west thereof, and constructed on the south side in the shoulder thereof, there is a manhole designated as No. 6 on claimant's exhibit 8. "C.B. #2" aforesaid is connected with said manhole No. 6 by a 12 or 18-inch concrete pipe. The foregoing catch basins and pipes or drains connecting one with the other and in turn connecting both with manhole No. 6 were constructed by the State of New York, and, at all times in the claim mentioned, maintained by it for the purpose of collecting, catching, and draining away surface waters in and about the vicinity of claimant's property. There also empties into said manhole No. 6 another 24-inch concrete pipe which enters it on its south side. The discharging end or opening of said pipe is so located in said manhole as to be directly opposite the point in the north side of said manhole where enters the 12 or 18-inch pipe connecting said manhole with said "C.B. #2". This 24-inch concrete pipe coming in from the south was constructed in the bed of an open and natural ditch or depression, which pipe carries, as did the open and natural ditch before it, the surface waters draining from an area or tract of land of about 36 acres lying south of said boulevard.

Manhole No. 6 aforesaid is the point of beginning of a storm-water sewer running easterly therefrom in the general direction of the city of Utica, New York, and paralleling the southern boundary line of Oriskany Boulevard. This sewer pipe leading easterly from said manhole No. 6 is 24 inches in diameter and leads directly to another manhole designated as manhole No. 7 on claimant's exhibit 8. Manhole No. 7 is located on the south side

of said boulevard and in the shoulder thereof about 153.3 feet easterly from manhole No. 6. From manhole No. 7 a 24-inch pipe extends easterly eventually making connection with a part of the storm-water sewer system of the City of Utica, New York. The details set forth herein relative to the storm-water sewer facilities at or near claimant's property describe those facilities as they existed at all times in the claim set forth.

The storm-water sewer pipes and manholes on the south side of Oriskany Boulevard, that is manhole No. 6 and manhole No. 7 and the sewer pipe connecting them together with the 24-inch drain pipe coming in from the south into manhole No. 6, to all of which we have hereinbefore made reference, were constructed by the Village of Yorkville, New York, before the paving of Oriskany Boulevard by the State. In fact, the State of New York had insisted that the village construct and install these storm-water sewer facilities on the south side of said boulevard before it would go on with its work of improving Oriskany Boulevard.

When manhole No. 6 aforesaid was constructed by the village, there was no opening on its north side, said opening having been cut into it by the State when "C.B. #1" and "C.B. #2" aforesaid were connected up with it. Prior to that time only the 24-inch pipe coming from the south emptied into it. These storm-water sewer facilities on the south side of Oriskany Boulevard were, at all times in the claim mentioned, maintained by the Village of Yorkville, New York, and the village authorities had been specifically advised by the State of New York not to interfere with the storm-water facilities constructed by it in that vicinity.

It appears from the record: That there was a heavy rainfall within a twelve-hour period during the night of September 25th and the morning of September 26, 1945, and during a three- or four-hour period on October 2, 1945; that water came out through "C.B. #1" and "C.B. #2" and particularly in a larger amount from the latter; and that this water flowed on to claimant's property and into the basement of the building there located.

We are unable to agree with the contention of the State, viz.: that the rainfall on the dates in question was of such an unusual, extraordinary, and unprecedented severity and character that it could not reasonably have been anticipated or provided against in the exercise of ordinary care and diligence, and that, in fact, it was such, in each instance, as to be deemed in law an act of God. Assuming that the rain storms herein complained of were

more severe than the usual rainfalls, and that a considerable quantity of water fell at the times in the claim mentioned, it appears that storms of a similar nature were not entirely unknown in that locality. There had been severe rain storms in this locality previous to the dates mentioned in the claim. Water had been seen coming out of the said catch basins after a heavy rainfall on occasions previous to the ones in question; and on at least one other occasion, in the month of September, 1944, water thus escaping from said catch basins had come upon claimant's premises and entered the basement of his building.

We hold that the rainfalls of September 25 and 26, 1945, and that of October 2, 1945, though severe, were not of unprecedented severity (*Loman* v. *State of New York*, 59 N. Y. S. 2d 492), and cannot be urged by the State herein as an act of God to defeat the claim herein. We are satisfied from the evidence that the State was or should have been aware, in the exercise of ordinary care, of the occurrence and reoccurrence of these storms. (*Dekowski* v. *County of Montgomery*, 263 App. Div. 697.) In *Daly* v. *State of New York* (226 App. Div. 154) the Appellate Division, Third Department, said at page 157 : "The exercise of ordinary care requires precaution as well against the extraordinary as against the ordinary. It is only the unforeseeable in the exercise of ordinary care, or the act of God that exculpates the negligent wrongdoer. (*Crowley* v. *State*, 99 App. Div. 52; 112 id. 872.)" Then, too, surface waters having been observed backing out of and escaping from "C.B. #1" and "C.B. #2" on occasions previous to those in question, the State was or should have been aware of, and should have anticipated, in the exercise of ordinary care, that they would do so again on the occasion of a severe storm and should have made adequate provision therefor.

Furthermore, we are of the opinion that the storm-water sewer facilities constructed and installed by the State of New York, which we have described herein, in the vicinity of claimant's property were not properly placed, laid out, and constructed, and by reason thereof were faulty in their operation, notwithstanding which the State continued to maintain the same as thus constructed. This faulty and improper construction of said storm-water sewer facilities and their continued maintenance in said condition by the State constitute negligence herein, and were the proximate cause of the overflowing of claimant's property by surface waters, thereby causing the damage to claimant's property hereinbefore set forth. The conclusion is inescapable that surface waters coming into the

concrete drain pipe leading from "C.B. #2" to manhole No. 6, because of said improper construction of said storm-water sewer facilities, were prevented from being discharged into said manhole when water therein accumulated had attained a certain height and, in fact, were forced back into said drain pipe by other water draining thereinto which met them head on and caused them to flow in reverse and to come up through the tops of " C.B. #1 " and " C.B. #2 " and out upon the highway from which latter point they flowed on to claimant's land and into his building. The evidence indicates to us that, from an engineering standpoint, the construction of said State-owned storm-water sewer facilities was improper; and there is nothing in the record which indicates to us that the acts of the Village of Yorkville in any way proximately contributed to the damage sustained by the claimant herein.

The State asserts that because the damage was caused by overflowing surface waters, it is *damnum absque injuria.* It is true that so long as the surface waters collected ultimately follow their natural course rather than being diverted elsewhere there can be no recovery. It has been held that when without the creation of a defined water course, or the alteration of an existing one, the result is so to change the natural contour of the land as to cause surface waters to collect in a highway and to overflow a neighbor's property, the act is no less lawful. It seems that since the water is not cast by drains or ditches upon adjoining premises, defendants may get rid of it any way they can. They have full dominion over their own land above as well as below surface. The resulting damage gives no right of action. *Damnum absque injuria.* (*Bennett* v. *Cupina,* 253 N. Y. 436, citing *Goodale* v. *Tuttle,* 29 N. Y. 459, 467; *Barkley* v. *Wilcox,* 86 N. Y. 140, 147; *Howard* v. *City of Buffalo,* 211 N. Y. 241, 258. See, also, *Bull* v. *State of New York,* 231 App. Div. 313, and for a review of pertinent cases see *Mennito* v. *Town of Wayland,* 56 N. Y. S. 2d 654.)

A municipality is not liable for an increase in flow of surface waters resulting solely from pavement of streets or other improvements, and cannot be required to limit the amount of surface water discharged into a stream to the natural flow of said stream before such improvement. (*Fox v. City of New Rochelle,* 240 N. Y. 109.) If, however, the city collects surface water into a single channel and casts it in a large and substantially increased volume on an adjacent owner so that the stream will be filled beyond its natural capacity and thereby causes the stream to overflow and flood his lands, the owner has

a cause of action. A municipality has no immunity from legal responsibility for creating or maintaining nuisances. (*Noonan* v. *City of Albany*, 79 N. Y. 470; *Foster* v. *Webster*, 44 N. Y. S. 2d 153, 158.)

The law is firmly established that in constructing sewers, and in keeping them in repair, a municipal corporation acts ministerially, and, having authority to do the act, is bound to the exercise of needful prudence, watchfulness and care. The authorities in support of these principles are too numerous and too familiar to require particular comment. (*Barton* v. *City of Syracuse*, 36 N. Y. 54.)

We are of the opinion that upon the facts established by claimant, he is entitled to recover against the State.

There remains but for us to determine the amount of claimant's damages. The evidence discloses that the damages sustained by claimant are substantial. The extent, component elements and amount thereof as testified to by the claimant are not contradicted or refuted by any direct evidence in the case nor by any legitimate inference therefrom. His testimony is not opposed to the probabilities, is not in its nature surprising or suspicious, and we see no reason why, on the question of damages, it should be denied conclusiveness. (*Hull* v. *Littauer*, 162 N. Y. 569; *Second Nat'l Bank* v. *Weston*, 172 N. Y. 250.)

The State has cited with particular emphasis the case of *Gibson* v. *State of New York* (187 Misc. 931) which we decided some time ago, and urges that it can see no difference between that case and the instant one. We are unable to agree with the State in that contention. We distinguish the instant case from the *Gibson* case upon the facts. We specifically held in the *Gibson* case that, upon the record, claimant had failed to establish that the storm sewerage and drainage system involved in the claim was improperly and negligently constructed and was inadequate. We also held therein that no negligence on the part of the State in the care and maintenance of said sewerage and drainage facilities had been shown. On the contrary, in the instant case, as we have already stated herein, improper, faulty, and negligent construction and negligent maintenance have been established.

The motions to dismiss made by the State at the end of claimant's case and at the end of the entire case are each respectively, upon all the grounds therein named, denied, with an exception reserved to the State.

We are, therefore, in an accompanying decision making an award to claimant in the amount asked for by the claimant in his claim herein.